1          IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

2              IN AND FOR THE COUNTY OF MARICOPA

3
STATE OF ARIZONA,                    )
4                                     )
         Plaintiff,                   )
5                                     )    1 CA-CR 18-0783
    vs.                               )    CR2017-005547-001
6                                     )
GREGORY LEE RODVELT,                  )
7                                     )
         Defendant.                   )
8    _____)

9

10                      Phoenix, Arizona
11                      September 11, 2018

12

13    BEFORE:   THE HONORABLE SALLY SCHNEIDER DUNCAN, JUDGE

14

15

16           REPORTER'S TRANSCRIPT OF PROCEEDINGS
             MOTION TO HOLD DEFENDANT NONBONDABLE
17

18

19

20

21
TARA L. KRAMER, RPR
22   Certified Reporter #50439

23

24   Prepared for Appeal
     ORIGINAL
25   COPY

GOVERNMENT
EXHIBIT

**6**

1:19-cr-00454-MC

Exhibit 6
Page 1 of 31

Produced Pursuant to Protective Order     RODVELT_0008087

```
 1                    A P P E A R A N C E S
 2   On Behalf of the State:
             Chong Ho Chung
 3           Maricopa County Attorney's Office

 4
     On Behalf of the Defendant:
 5           Gregory Lee Rodvelt
             Pro Per
 6
             James Buesing
 7           Advisory Counsel

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Exhibit 6
Page 2 of 31

Produced Pursuant to Protective Order                    RODVELT_0008088

1                        P R O C E E D I N G S

2

3                THE COURT:  This is the time set for what I

4    will call oral argument and a final trial management

5    conference in CR2017-005547-001.  Can you please announce?

6                MR. CHUNG:  Good morning, Your Honor, CH

7    Chung for the State.

8                THE DEFENDANT:  Gregory Rodvelt, Defendant.

9                MR. BUESING:  Good morning, Your Honor,

10   James Buesing appearing as advisory counsel for

11   Mr. Rodvelt.

12               THE COURT:  Okay.  Did I ever receive a

13   statement of the case for Count 6?  I thought I was

14   supposed to receive that.

15               MR. CHUNG:  I apologize, Your Honor, I -- I

16   did not send the Court a copy of that statement yet.

17               THE COURT:  We'll do it right now.

18               MR. CHUNG:  Yes, Your Honor.

19               THE COURT:  Because while we're handling

20   other matters, my staff can print it out for all of us,

21   and I can finalize that.

22               Second, I've received a motion to have the

23   Defendant nonbondable, and I need -- and I'm inclined to

24   hold the Defendant nonbondable based upon the continued

25   violations of the Pretrial Services release orders.  I'm

Exhibit 6
Page 3 of 31

Produced Pursuant to Protective Order                                RODVELT_0008089

1  just letting you know that's what I'm thinking, sir.

2                THE DEFENDANT:   I believe Your Honor should

3  listen to the -- what's going on in the case instead of

4  just jumping to conclusions.  What was written is not

5  correct.

6                THE COURT:   Then this is your opportunity to

7  be heard.  I always like people to know what I'm thinking

8  so that you're able to direct your attention to what the

9  Court's concerns are, so let me tell what you my concerns

10  are, some of which are outlined in the motion.

11                There was an allegation that you had

12  violated Pretrial Services release by going to an

13  establishment that you shouldn't have gone to, that was

14  here, that involved weapons.

15                Then there's an allegation that you were

16  granted permission by a judge to travel out of state where

17  you incurred contact with law enforcement in an ongoing

18  investigation with respect to alleged criminal conduct in

19  the State of Oregon.

20                And then -- I'm just outlining everything I

21  understand -- and then you failed to appear here.  There

22  was the medical overlay, so I just want to talk about

23  that, and I had to secure your appearance by phone.

24                And then I have evidence or information

25  based on this motion which I received that you then were

Exhibit 6
Page 4 of 31

Produced Pursuant to Protective Order                RODVELT_0008090

1  out of compliance with Pretrial Services and arrested and

2  then released on a bond.  So I need to understand what's

3  going on here.

4          You can understand from my perspective there

5  appear to be a series of repeated violations of pretrial

6  release and apparently contact with the criminal justice

7  system in violation.  That how I see it.

8          Mr. Buesing, would you like a moment with

9  your advisory client, or are you substituting in?

10          MR. BUESING:  I am not substituting in.  I

11  just wanted to have an opportunity to remind Mr. Rodvelt

12  of something real quick, if I can.

13          THE COURT:  Please do.

14          MR. BUESING:  Thank you.

15          MR. CHUNG:  Your Honor, may I approach?

16          THE COURT:  Yes.

17          MR. CHUNG:  I am handing up to the Court a

18  copy of a criminal complaint filed on September 10th, as

19  well as --

20          THE COURT:  In Oregon, okay.  So there are

21  actually now criminal charges in Oregon.  Is there an

22  initial appearance or anything --

23          MR. CHUNG:  Not yet, Your Honor.

24          And I have -- attending this hearing is

25  Special Agent Phillip Bates of the FBI in case the Court

Exhibit 6
Page 5 of 31

Produced Pursuant to Protective Order                    RODVELT_0008091

1   has any questions for --

2                  THE COURT:  No, let me -- does the Defendant

3   have this document?

4                  MR. CHUNG:  Yes, I've just handed him a copy

5   of the criminal complaint, and I believe he has a copy of

6   the court-appointed receiver civil matter --

7                  THE DEFENDANT:  No, I don't --

8                  THE COURT:  Just give me a moment, because I

9   haven't seen these -- just a moment.  I need to read this

10  now as well, so just give me a second.

11                 Okay.  So, obviously, there may be matters

12  pending before a Grand Jury in Oregon that you may not be

13  in a position to speak about at this time, and I don't

14  know where's any intention to have Mr. Rodvelt appear in

15  court -- federal court here for transfer to Oregon.

16                 These are all matters that would normally

17  happen.  I used to practice in federal court, so I'm very

18  familiar with that procedure.

19                 So, sir, I'm not asking you a single

20  question related to this criminal complaint.  You have a

21  Fifth Amendment right not to speak about it, and so you're

22  not going to speak about it, not in this courtroom,

23  because anything that you say could be used against you.

24                 THE DEFENDANT:  I --

25                 THE COURT:  There's a process -- wait, sir,

Exhibit 6
Page 6 of 31

Produced Pursuant to Protective Order

1  let me finish talking.  I have control of this courtroom.
2  You do not.
3              The complication for you is not only are
4  your activities in Oregon now subject of criminal
5  prosecution, they are the subject matter at least in part,
6  only in part, of my reconsidering your bond status and
7  your release status here.
8              So what you need to understand is that's
9  complicated, because if you plan to argue anything related
10 to Oregon, you waive your Fifth Amendment right.  And
11 there are criminal charges there, and anything you say can
12 and will be used against you in that prosecution.  Do you
13 understand that?
14              THE DEFENDANT:  Yes, Your Honor.
15              THE COURT:  Furthermore, I couldn't even
16 appoint Mr. Buesing.
17              Are you a CJA panel lawyer?
18              MR. BUESING:  I am, Your Honor.
19              THE COURT:  Okay.  That's a little bit of a
20 game changer for that purpose, because you may be advisory
21 counsel in this matter, but -- and I don't have federal
22 jurisdiction to appoint you.
23              But I would say that you should cozy up to
24 Mr. Rodvelt and, in fact, step out of this courtroom and
25 you have a chat with him, because he may be hailed to

Exhibit 6
Page 7 of 31

Produced Pursuant to Protective Order                                           RODVELT_0008093

1  appear in federal -- a federal magistrate judge directly
2  down the street for his initial appearance and decisions
3  about getting him to appear in Oregon on what is now a
4  federal charge in Oregon.  And since you are on the panel,
5  you are very aware of that process.
6            MR. BUESING:  Yes, Your Honor.  I did
7  caution him about the advisements that the Court just
8  advised him on.
9            THE COURT:  Okay.  All right.  Did you talk
10 to him about the fact that he can be hailed into the
11 federal court here, and he could be arrested?
12            MR. BUESING:  We've not spoken --
13            THE COURT:  He doesn't have to be summonsed
14 in.  He can be invited in under not his own free will to
15 appear over there.
16            MR. BUESING:  We've not spoken specifically
17 about the procedure, Your Honor.
18            THE COURT:  Okay.  I'm just going to give
19 you a moment to step outside the courtroom and talk about
20 the comprehensive nature of that problem.
21            MR. BUESING:  Yes, Your Honor.
22            THE COURT:  Because I am considering those
23 activities, along with whatever your client may want to
24 talk about what happened over the weekend.
25            But given the fact that I have no earthly

1   idea what he's going to say about that, he may have Fifth
2   Amendment rights related to that activity as well that he
3   may not want to chat about.  So I think you should talk to
4   him for a moment.
5               MR. BUESING:  Yes, Your Honor.
6               THE COURT:  Okay.  Please do, feel free.  We
7   will be at recess until you're ready to come back and chat
8   with us about this issue.
9               (Thereupon, proceedings are recessed briefly
10  and thereafter resumed.)
11              THE COURT:  All right.  We're back on the
12  record.  Everyone is present.
13              Mr. Buesing, I took the liberty to print
14  Rule 5 for your advisory client.  If you'd also give the
15  State a copy of that, he could understand what happens in
16  federal court.
17              MR. BUESING:  Thank you, Your Honor.
18              THE COURT:  I know you're aware of the rule,
19  but I printed a copy for you as well.
20              MR. CHUNG:  Thank you, Your Honor.
21              THE COURT:  I didn't think that he needed to
22  know yet about Rule 20.  That's down the road, depending
23  on what decisions are made, but he will be required to
24  appear in federal court either of his own free will or
25  under arrest.

Exhibit 6
Page 9 of 31

Produced Pursuant to Protective Order                                    RODVELT_0008095

1              And since you're representing yourself, I
2    wanted you to understand I'm not a federal judge, but
3    that's what happens in federal court.  Now --

4              THE DEFENDANT:  I haven't read it, Your
5    Honor --

6              THE COURT:  No, I'm not here to give you any
7    rights in federal court.  That's just a courtesy for you,
8    sir, so you understand there are procedures in place.

9              And the allegations that I have read are
10   very serious.  A federal officer was allegedly -- suffered
11   real injury and had to receive medical attention.  So I'm
12   ready to hear -- do you want Mr. Buesing to represent you,
13   or you want to continue to represent yourself?

14             THE DEFENDANT:  I just want to state what
15   the -- what's on the record, just to get the calendar
16   clear, so that Your Honor's saying what happened, what
17   transpired --

18             THE COURT:  Okay.

19             THE DEFENDANT:  -- as far as the timeline
20   is.  We're not going to talk about anything other than
21   just the timeline.

22             THE COURT:  That's fine.  You're free to
23   choose, as long as you understood the consequences of what
24   you say, what you would like to say, okay?

25             THE DEFENDANT:  I'm going to state what's

Exhibit 6
Page 10 of 31

Produced Pursuant to Protective Order                                    RODVELT_0008096

1   already on the record so that you, Your Honor, can

2   understand.  On -- we were in court on August 8th in

3   judge -- on Master Calendar that is scheduled for trial.

4   At that time I was ready to go to trial, but the

5   prosecution asked for a continuance.

6                    THE COURT:  I'm not --

7                    THE DEFENDANT:  You're talking about --

8                    THE COURT:  Sir --

9                    THE DEFENDANT:  It's important --

10                    THE COURT:  No, no, no, I want to confine --

11   you may have other arguments.  I am not here to hear those

12   arguments.  This is the only issue before the Court right

13   now, a simple issue.

14                    THE DEFENDANT:  Okay.

15                    THE COURT:  The State filed a motion to hold

16   you nonbondable.  The State -- and you should have

17   received a copy of that motion.

18                    THE DEFENDANT:  I just when I came into

19   court today received it.

20                    THE COURT:  Right.  And the State has

21   discussed in that motion -- and I'm referring to it again,

22   a couple of events, that one of them is the incident in

23   Oregon that is discussed in this.

24                    There's also the issue with respect to what

25   happened on September 7th; and again, this is Oregon, but

Exhibit 6
Page 11 of 31

Produced Pursuant to Protective Order

RODVELT_0008097

```
 1  there's also -- my understanding is that there was a
 2  whereabouts unknown and an arrest over the weekend.  Is
 3  that not accurate?
 4              MR. CHUNG:  Your Honor, that relates to the
 5  September 7th incident.
 6              THE COURT:  Okay.  So he was arrested in the
 7  federal charge, or was he --
 8              THE COURT:  Okay.  So it was a pretrial
 9  violation, and the state court charge; correct?
10              MR. CHUNG:  Yes.
11              THE COURT:  Got it.
12              Okay.  So all of it relates to, apparently,
13  what happened in Oregon or the allegations arising out of
14  what happened in Oregon; is that correct?
15              MR. CHUNG:  Yes.
16              THE COURT:  Okay.  That's all we're here to
17  talk about.
18              THE DEFENDANT:  Okay.  That's what I was
19  going to mention to the Court.  I went there to Oregon.
20  The reason was, was to go to court on the 17th.  I filed a
21  motion to go -- to be at that hearing, and we were in
22  agreement.
23              And then Monday, Tuesday, Wednesday,
24  Thursday, after I filed the motion, you know, I was
25  supposed to be able to leave.  They didn't let me leave
```

Exhibit 6
Page 12 of 31

Produced Pursuant to Protective Order

```
 1   until 1:00 o'clock on Thursday.  I couldn't make the 9:00
 2   o'clock appointment in Oregon, couldn't drive straight
 3   through.  No way you can make it on time.
 4              So Oregon held a hearing, apparently
 5   appointed a receiver.  I arrived there Friday afternoon.
 6   The property was under my name, and it stayed under my
 7   name.  I've owned it for five years --
 8              THE COURT:  Mr. Buesing, I'm really
 9   concerned --
10              MR. BUESING:  Your Honor --
11              THE COURT:  -- because all of this
12   information are links in the chain of evidence for which
13   your client is facing --
14              MR. BUESING:  Yes, Your Honor.
15              THE COURT:  -- very serious charges.
16              He's not your client.  You're advisory
17   counsel.  He's here unrepresented in the federal matter.
18   I don't want to hear about it.
19              MR. BUESING:  Yes, Your Honor, and I have
20   advised him about what not to speak about --
21              THE COURT:  I'm not comfortable with that,
22   okay?  I have an FBI agent in the back of the courtroom
23   taking notes.  I'm not comfortable with that.  I'm not in
24   federal court, but anything he says here can be used
25   against him, so I'm not going to talk to you anymore.
```

Exhibit 6
Page 13 of 31

Produced Pursuant to Protective Order

RODVELT_0008099

1          But here's what I want to do.  I'm going to
2   hold you nonbondable.  I think there's been a material
3   change in circumstances.  The information that has now
4   been presented, in addition to what was in the motion
5   regarding the actual criminal complaint that has been
6   prepared -- again, I don't know what's happening in that
7   with respect to how the federal government is planning to
8   proceed regarding having you appear in that case.  I don't
9   know.
10          Counsel, I know you're a state prosecutor,
11  but you do have an FBI agent in the back.  If there's any
12  information that's known or knowable that can be shared
13  with the Court, the state court judge, that's very helpful
14  to me.
15          MR. CHUNG:  Your Honor, I'm going to ask
16  Agent Bates to make a representation.
17          THE COURT:  Okay.  So, sir, come on up here
18  so you can be on the record, and tell me your full name.
19          AGENT BATES:  Yes, my name is Phillip, with
20  two L's, Bates, B-A-T-E-S.
21          THE COURT:  And my understanding is you are
22  an FBI agent?
23          AGENT BATES:  Yes, ma'am, I'm a Special
24  Agent.
25          THE COURT:  And that you're here in

Exhibit 6
Page 14 of 31

Produced Pursuant to Protective Order

1   connection with a criminal complaint I've now reviewed.

2                   AGENT BATES:  Yes, ma'am, and corresponding

3   arrest warrant.

4                   THE COURT:  Okay.  So you're here to arrest

5   the Defendant?

6                   AGENT BATES:  Yes, ma'am.

7                   THE COURT:  Okay.

8                   AGENT BATES:  Should he be released from

9   custody today, it was our intention to take him into

10  custody.  However, out of deference to the Court --

11                  THE COURT:  Okay.  Well, I needed to know

12  that, because if I'm going to -- if I know that he's going

13  into federal custody to deal with these charges, I would

14  release him to you.  I would be comfortable raising that

15  as a prospect if this -- I want to know how the State

16  feels about that.

17                  MR. CHUNG:  Your Honor, I had discussed that

18  possibility with Agent Bates, but Agent Bates also -- we

19  came to an agreement that he can wait for this trial to

20  conclude before taking Mr. Rodvelt into custody on the

21  federal matter.

22                  THE COURT:  Okay.  And the -- and the issue

23  there would be that on -- he could still -- and I'm just

24  trying to see through the consequences of the various

25  options here, okay?

Exhibit 6
Page 15 of 31

Produced Pursuant to Protective Order                              RODVELT_0008101

1      The allegations in the federal case are,
2   frankly, more serious than the allegations in the state
3   case because we have an allegation that a federal agent
4   was injured, actually had to seek medical attention.
5   That's No. 1.  Not that the State case isn't important.
6      The second issue is this:  If Mr. Rodvelt is
7   convicted in the state case, it's mandatory prison.  So
8   there's going to have to be -- and he then is hailed over
9   into federal court, but I would want to make sure any time
10  in custody he's receiving credit for in the state
11  sentence, and that we're not going to have any kind of
12  problem with what happens between the state and the
13  federal system regarding managing those issues.
14      It becomes more complicated.  So I just want
15  to understand what the State's position is regarding that.
16      MR. CHUNG:  Your Honor, the State would not
17  be opposed to giving Mr. Rodvelt credit in that situation.
18      THE COURT:  Okay.  All right.  Okay.  All
19  right.  Thank you.  That's very clarifying.
20      AGENT BATES:  Thank you.
21      THE COURT:  Mr. Buesing, does your client
22  want to be represented at this point or not?
23      Because let me just explain, sir, where this
24  train is headed.  I'm about to take you into custody, and
25  we're about to go to trial, okay?  And then you're also --

Exhibit 6
Page 16 of 31

Produced Pursuant to Protective Order                                          RODVELT_0008102

1    understand, we have an FBI agent here that if I'm to
2    release you, you're going into custody, anyway, oh the
3    federal case.

4              So you're going into custody.  You'll either
5    be in federal custody, having your initial appearance on
6    this case, and I -- and I don't know whether you would be
7    released in that case.  But the problem with that case is
8    it requires transfer up to Oregon.

9              So, Mr. Rodvelt, do you want a lawyer to
10   represent you at this point?  Because this is getting very
11   legally technically complicated, And Mr. Buesing happens
12   to practice both in federal and state court.

13             THE DEFENDANT:  I understand, Your Honor,
14   what's going on in the federal case, and I've spoken with
15   Mr. Bates before, and the Court doesn't want to hear
16   anything that I can say, so if I --

17             THE COURT:  What do you have --

18             THE DEFENDANT:  I'm only half-owner of this
19   property that I'm accused of being on --

20             THE COURT:  I'm not --

21             THE DEFENDANT:  -- and it's --

22             THE COURT:  Any statement -- Mr. Buesing,
23   could you talk --

24             THE DEFENDANT:  I would rather take care of
25   this case first and then deal with the federal case

Exhibit 6
Page 17 of 31

Produced Pursuant to Protective Order                                    RODVELT_0008103

 1   second.

 2                   THE COURT:  Okay.  I'm taking you into

 3   custody.  Now, counsel, he has to be processed.

 4                   MR. CHUNG:  Okay.

 5                   THE COURT:  So I'm not -- I think I can get

 6   him back by 1:30, but I can't guarantee that.  I'm just

 7   concerned about the processing time it takes --

 8                   MR. CHUNG:  Sure.

 9                   THE COURT:  -- because I would bring a

10   deputy up here to take Mr. Rodvelt into custody.

11                   MR. BUESING:  May I have just one moment,

12   Your Honor?

13                   THE COURT:  And then he would need to have

14   clothes and other things arranged in order for him to be

15   trial appropriate.

16                   MR. CHUNG:  So would Your Honor propose,

17   then, starting voir dire tomorrow?

18                   THE COURT:  Well, that's what I'm now

19   thinking.

20                   Moreover, I would need to change the

21   preliminary jury instructions to include the instruction

22   about a deputy in the courtroom.

23                   MR. CHUNG:  Okay.

24                   (Discussion off the record.)

25                   THE COURT:  Go ahead, Mr. Buesing.

Exhibit 6
Page 18 of 31

Produced Pursuant to Protective Order                                    RODVELT_0008104

1           MR. BUESING:  Thank you, Your Honor.

2           Mr. Rodvelt still wishes to represent

3   himself in the state matter.  He did want me to advise the

4   Court that if he were to be taken into custody, that he

5   would prefer to be taken into custody by the FBI agent so

6   he could address those issues.  That is a request that he

7   would make, so --

8           THE DEFENDANT:  I also want to point out

9   that I have a life-threatening illness, and I'm on

10  medication for blood clots, and I need to stay -- I need

11  to keep my medicine.

12          THE COURT:  Well, Mr. Buesing can talk to

13  you about the difference between being being a resident of

14  the feds or a resident of the state.  So that's a separate

15  issue, and you're free to talk to Mr. Buesing about that.

16          Mr. Rodvelt, you've heard, would like to

17  reverse the order of the -- of the cases, but I'm open to

18  whatever is workable between the federal and the state

19  government.

20          MR. CHUNG:  In that case, Your Honor, the

21  State would like to proceed as scheduled with this trial

22  first.

23          THE COURT:  Okay.  All right.  I'm going to

24  bring a deputy up to the courtroom.  I'm finding you

25  nonbondable.  I'm finding that you are a danger to other

Exhibit 6
Page 19 of 31

Produced Pursuant to Protective Order                    RODVELT_0008105

1    persons or the community.  I am going to, based on the
2    processing time for this, reset the jury for tomorrow
3    morning at 10:45 a.m., because Mr. Rodvelt will be in
4    custody.  You'll need to make arrangements for there to be
5    civilian clothes available.

6              You will continue to represent yourself.
7    You still have a right to represent yourself in connection
8    with the trial.  But, again, I'm going to set the trial
9    time -- I will redo the preliminary instructions to
10   include the fact that there's a deputy that will be
11   present in the courtroom and that the jury is to not draw
12   any conclusions from that deputy being present in the
13   courtroom.

14             I will have to address the -- also adjust
15   the trial date by adding one day.  That's what I'm going
16   to have to do.

17             THE DEFENDANT:  It's -- by doing it this
18   way, Your Honor, you've made it almost impossible for me
19   to represent myself.

20             THE COURT:  Sir --

21             THE DEFENDANT:  I have subpoenas to get out
22   today.  I was arrested Saturday morning.  Saturday,
23   Sunday, I was in -- I couldn't get subpoenas done, and --
24   and by representing myself, I don't have anybody to serve
25   the subpoenas or do anything.

Exhibit 6
Page 20 of 31

Produced Pursuant to Protective Order                                    RODVELT_0008106

1          THE COURT:  Sir, you have an advisory

2   counsel sitting next to you.  He will not be behind bars.

3   So -- and this case has been set, and you, yourself, said

4   you were ready to go earlier.

5          So seek Mr. Buesing's assistance.  He

6   actually has knowledge of the rules of procedure and the

7   Rules of Evidence.  He can also substitute in and

8   represent you completely, but I don't want to trample on

9   your right to represent yourself.

10          But you can seek his assistance.  He is

11  there, so do seek his assistance, but I am taking you into

12  custody.  Trial will commence tomorrow.

13          Counsel, I'm going to e-mail you both copies

14  through my staff of the revised instructions.

15          Mr. Buesing, you'll have to -- I know you're

16  not counsel of record.  You're only advisory counsel.  I

17  have no way to get them to the jail.

18          There is one more housekeeping matter I can

19  take care of.  There's an additional statement of the case

20  that was added to address Count 6, which is that on June

21  3rd, 2017, Defendant knowingly -- I'm going to say

22  allegedly knowingly disobeyed or resisted a lawful order,

23  process, or other mandate of the Maricopa County Superior

24  Court.

25          So I will agree with that modification that

Exhibit 6
Page 21 of 31

Produced Pursuant to Protective Order                                    RODVELT_0008107

1   it's an allegation to add that to the current statement of

2   the case.

3                    Counsel, anything else?

4                    MR. CHUNG:  No, Your Honor.  Thank you.

5                    THE COURT:  Okay.

6                    MR. BUESING:  Your Honor, I just -- just a

7   few notes that -- just of concern.  I will do my best to

8   coordinate with Mr. Rodvelt to keep things going as

9   scheduled.  He does -- I'll go through his paperwork.  He

10  does represent himself.  His paperwork should follow

11  him --

12                   THE COURT:  I'll make sure when the deputy

13  comes in -- Mr. Rodvelt actually has to sign right now my

14  order, but I will stay here and communicate with the

15  deputy both that Mr. Rodvelt is under medical care to make

16  sure that there's no disruption in the medical care, and

17  that his -- he represents himself, so his paperwork should

18  stay with him.

19                   But what would be of assistance is while

20  we're waiting for the deputy, that backpack will not --

21  that will be taken.  That will be secured.  But if I were

22  you, I would remove all of the paperwork you think you

23  need to refer to in connection with representing yourself,

24  so that it can be separated.  And I can direct the deputy

25  to that matter, and the deputy will know to safeguard that

Exhibit 6
Page 22 of 31

Produced Pursuant to Protective Order                                RODVELT_0008108

1    material.

2                    MR. BUESING:  Yes.

3                    THE COURT:  Chrystal, in fact, get an

4    Expando for Mr. Rodvelt right now so he can put his legal

5    paperwork that he needs to represent himself in an

6    Expando, and it can be separated for the deputy so the

7    deputy knows what is legal paperwork as opposed to what

8    they will inventory and save until you're released, okay?

9                    Anything else?

10                   MR. BUESING:  And I will work with getting

11   clothing for him.  I'll need his booking number, so I'll

12   try to get that as quickly as I can.

13                   THE COURT:  Yes, and you can check back with

14   my staff about that.  We'll know it as soon as you do,

15   but, you know, I don't have special access other than we

16   can look it up just like you can.

17                   MR. BUESING:  Yes, Your Honor.

18                   THE COURT:  Okay.  And I think we had

19   originally said the trial would end -- let me look at the

20   preliminary instructions.  I just want to make sure we're

21   accurate about trial dates here so we don't have to have

22   instructions reprinted again.

23                   The trial dates I have were today, so that

24   date will drop off.  September 12th, 13th, 17th, 18th,

25   20th, 24, and I'm adding 25.

Exhibit 6
Page 23 of 31

Produced Pursuant to Protective Order                                    RODVELT_0008109

```
 1              MR. BUESING:  Okay.  And, Your Honor --
 2              THE COURT:  If needed, obviously.
 3              MR. BUESING:  I'm sorry to interrupt.  The
 4   17th, that was that afternoon that I have that urgent
 5   hearing that was moved and combined with Judge Beatty
 6   (phonetic) in the afternoon.
 7              THE COURT:  Okay.  So that's morning only,
 8   okay?
 9              MR. CHUNG:  Thank you, Your Honor.
10              MR. BUESING:  Thank you, Your Honor.
11              THE COURT:  Okay.  And, counsel, I will add
12   the additional statement of the case as to Count 6 just to
13   the original statement of the case that was finalized,
14   okay?
15              MR. CHUNG:  Thank you.
16              MR. BUESING:  Thank you, Your Honor.  And
17   we'll go off the record, but I'll wait here for the deputy
18   so I can direct the deputy.
19              (Thereupon, proceedings are recessed and
20   thereafter resumed.)
21              THE COURT:  Two instructions.  Mr. Rodvelt
22   is under medical care and is taking prescription medicine.
23   So it's very important that there be no disruption in his
24   medicine, because trial will start tomorrow.  So he's in
25   trial, and the trial's going to start tomorrow.  And I
```

Exhibit 6
Page 24 of 31

Produced Pursuant to Protective Order

```
 1   want to make sure he's fully medicated and properly
 2   medicated.
 3                    THE DEPUTY:  I'll put that on his medical
 4   card.
 5                    THE COURT:  And then he also is representing
 6   himself.  So I've asked him to separate out of the
 7   backpack those papers and documents and rules of procedure
 8   that he'll need in the jail in order to represent himself.
 9   So he has to have that paperwork --
10                    THE DEPUTY:  All the paperwork, but they
11   won't let him take the book in right now.
12                    MR. BUESING:  Do you want the --
13                    THE DEFENDANT:  Without a trial handbook?  I
14   can't read my book --
15                    THE COURT:  He needs that book, so I'm
16   ordering the book stay with him.  It can be checked for
17   contraband, obviously, but he needs the book, because
18   trial is tomorrow, and I don't want there to be any record
19   of any problem with his access to the material.
20                    THE DEPUTY:  We'll look through it --
21                    THE COURT:  Yes.  If there's any difficulty,
22   circle back to me, because I want to be able to start this
23   trial tomorrow.  I don't want a problem.
24                    THE DEPUTY:  Okay.
25                    THE COURT:  Okay.  Thank you.  We're at
```

Exhibit 6
Page 25 of 31

Produced Pursuant to Protective Order

```
 1   recess.
 2                   (Thereupon, proceedings are recessed and
 3   thereafter resumed.)
 4                   THE COURT:  We're back on the record.
 5                   Counsel, because of the arrest warrant, the
 6   last day got, I think, vacated or -- and so I want to make
 7   sure we have a last day.  So the original last day was --
 8   what's the last day that was --
 9                   THE DEFENDANT:  It's got my medicine in it
10   and everything.
11                   THE COURT:  I think the last day that I last
12   noted that we had --
13                   THE CLERK:  I have 9-16.
14                   THE COURT:  9-16, so we're still good.
15                   Okay.  I'm just going to affirm the last day
16   that was last existing, because the arrest won't disrupt
17   any prep for new trial or anything.
18                   Okay.  And who's the sergeant?
19                   THE DEPUTY:  He's just outside.  He's coming
20   in.
21                   THE COURT:  Okay.  I just want to make sure,
22   if there's any questions, we can deal with that.
23                   THE DEFENDANT:  Sure I can't turn myself in
24   tomorrow instead --
25                   THE COURT:  Nope.
```

Exhibit 6
Page 26 of 31

Produced Pursuant to Protective Order                                          RODVELT_0008112

1          THE DEFENDANT:  -- so I can get my medicine
2    and whatnot?
3          THE COURT:  Nope.
4          THE DEFENDANT:  Okay.
5          THE COURT:  Are you the sergeant?
6          SERGEANT KELLER:  Yes, ma'am.
7          THE COURT:  Hello, sergeant.  A couple
8    things.  We're starting trial tomorrow.
9          SERGEANT KELLER:  Okay.
10          THE COURT:  So I have a couple -- this
11    gentleman is under medical care and is taking medicine,
12    and it's very important that there be no disruption.  I
13    know I'm taking him into custody, but I can't have
14    anything impacting the trial proceedings, so he has to be
15    able to maintain his medical care while in trial.  So
16    that's the first thing.
17          SERGEANT KELLER:  Okay.
18          THE COURT:  The second thing is he's
19    representing himself.  I had him separate his legal papers
20    out into the Expandos.  I've been told he cannot have the
21    book, but it is a trial book.  It is a trial prep book,
22    and I ordered that he be permitted to have it again so
23    that there will there will not be any claim that he was
24    deprived of his legal materials, and we have trial
25    starting tomorrow.

Exhibit 6
Page 27 of 31

Produced Pursuant to Protective Order                                    RODVELT_0008113

1          SERGEANT KELLER:  Unfortunately, Judge, I

2   can answer both those questions for you.  We do not

3   control what the jail does.  They will not allow my

4   deputies to put that in the jail.  They will allow his pro

5   per attorney to take it and give it to him at the jail --

6          THE COURT:  Okay.

7          SERGEANT KELLER:  -- but we have to put it

8   in property for safekeeping because we have what we call

9   an 8-by-12 plastic bag that they allow us to put stuff in.

10          As far as his medical, the Sheriff's Office

11   can't control the medical.  That is CHS that controls the

12   medical.  We can put a note in that he needs to be on his

13   meds in there, but we have no say as to what CHS does.

14          THE COURT:  Well, I'm going to order that

15   CHS meet with Mr. Rodvelt today.

16          SERGEANT KELLER:  They will see him today,

17   Judge.

18          THE COURT:  And further, that all

19   prescription medication be maintained while in the custody

20   of Maricopa County Jail.

21          SERGEANT KELLER:  Very good.

22          THE COURT:  Okay.

23          SERGEANT KELLER:  That works.

24          THE COURT:  Anything else?

25          SERGEANT KELLER:  That's all that we can do,

Exhibit 6
Page 28 of 31

Produced Pursuant to Protective Order                    RODVELT_0008114

1  Judge.

2              THE COURT:  Mr. Buesing, I know you're

3  advisory counsel.  You're going to have to secure the book

4  and take it over to the jail, but he'll be in the

5  horseshoe for a while --

6              SERGEANT KELLER:  Yeah, you can take it over

7  to the jail, let them know that he's being remanded in and

8  that he's going to be in intake, and they will find him in

9  intake and give it to him.

10             MR. BUESING:  I -- so I take it --

11             SERGEANT KELLER:  4th --

12             MR. BUESING:  So if I take -- if I'm taking

13 the book --

14             THE COURT:  Just the book.

15             MR. BUESING:  Okay.  So he can have the --

16 the papers?

17             SERGEANT KELLER:  He can take those with

18 him.  It's the book -- he can keep those in his

19 possessions.

20             MR. BUESING:  Okay.  And I did have a

21 question, because Mr. Rodvelt wants me to take his car

22 keys.  I'm not comfortable with taking possession of --

23             THE COURT:  They go into the Sheriff's

24 custody.  And they safekeep that with any other property

25 that they secure upon his admission into the Maricopa

Exhibit 6
Page 29 of 31

Produced Pursuant to Protective Order

1  County Jail.  That's where the car keys go.  So put them

2  in the backpack.

3              Anything else?

4              MR. BUESING:  And I believe Mr. Rodvelt -- I

5  can call -- he did give me phone numbers for two of his

6  friends about obtaining his car, and things like that.

7  I'll contact them and --

8              THE DEFENDANT:  So my car's not impounded.

9              THE COURT:  Well, the problem I have, sir,

10 is I'm not taking custody of the car keys, and Mr. Buesing

11 has indicated he's not taking custody of the car keys.  So

12 I don't have a way to secure your car keys.

13             THE DEFENDANT:  I'll try and give the car

14 keys to somebody else so they can pick my car up.

15             THE DEPUTY:  We can explain that to you,

16 sir --

17             THE COURT:  You all work that out with the

18 jail, but the jail inventories everything that they

19 safeguard.

20             Okay.  We're at recess.

21             MR. CHUNG:  Thank you, Your Honor.

22             (Thereupon, proceedings are adjourned.)

23

24

25

Exhibit 6
Page 30 of 31

Produced Pursuant to Protective Order                        RODVELT_0008116

```
 1
 2
 3
 4
 5                    C E R T I F I C A T E
 6
 7            I, TARA L. KRAMER, do hereby certify that
 8   the foregoing pages constitute a full, true, and accurate
 9   transcript of the proceedings had in the foregoing matter,
10   all done to the best of my skill and ability.
11            WITNESS my hand this 28th day of February,
12   2019.
13
14                        /s/
                  TARA L. KRAMER, RPR
15                Certified Reporter #50439
16
17
18
19
20
21
22
23
24
25
```

Exhibit 6
Page 31 of 31

Produced Pursuant to Protective Order                    RODVELT_0008117