IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**UNITED STATES OF AMERICA**,  Case No. 1:19-cr-00454-MC

          Plaintiff,  **OPINION & ORDER**

   v.

**GREGORY LEE RODVELT**,

          Defendant.

_____

**MCSHANE, Judge**:

After a six-day jury trial, Gregory Lee Rodvelt was convicted of assaulting a federal officer with a firearm. Verdict Form 1–2, ECF No. 185. Mr. Rodvelt was also originally charged with possession of an unregistered NFA firearm and using a destructive device in the commission of a violent crime. However, on the morning of day six, immediately before final instructions and closing arguments, the United States dismissed with prejudice both the possession charge and destructive device enhancement. Tr. 1211–12, ECF No. 203-1.

1 – OPINION AND ORDER

Mr. Rodvelt now moves for a new trial in the interests of justice. Def.'s Mot. 1, ECF No. 199. Mr. Rodvelt argues the prosecution presented prejudicial testimony about destructive devices prior to dismissing the related charges. Because of this, he claims the jury was irrevocably tainted by prejudicial spillover. Def.'s Mot. 1–2. However, Mr. Rodvelt does not meet his burden of proving the claimed prejudicial spillover resulted in a miscarriage of justice. Therefore, his Motion for a New Trial is DENIED.

## STANDARD

A court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). This is a high bar and courts should only grant these motions "in exceptional circumstances in which the evidence weighs heavily against the verdict." *United States v. Del Toro-Barboza*, 673 F.3d 1136, 1153 (9th Cir. 2012) (citing *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981). Prejudicial spillover may constitute compelling prejudice requiring a new trial. *See United States v. Lazarenko*, 564 F.3d 1026, 1043–44 (9th Cir. 2009).

Prejudicial spillover occurs when evidence related to dismissed counts is used to obtain a conviction on the remaining charges. *Id.* at 1043. The Ninth Circuit has set out a five-factor test to assess whether a defendant was prejudiced by evidence associated with now dismissed charges. *Id.* at 1044. These factors include (1) whether the evidence was so inflammatory that it would tend to cause the jury to convict on the remaining counts; (2) the degree of overlap and similarity between the dismissed and remaining counts; (3) a general assessment of the strength of the government's case on the remaining counts; (4) whether the trial court diligently instructed the jury; and (5) whether there is evidence, such as the jury's rendering of selective verdicts, to indicate

that the jury compartmentalized the evidence. *Id.* The defendant must prove "prejudice so pervasive that a miscarriage of justice looms"—a high bar.[1] *Id.* at 1043 (citation omitted).

## DISCUSSION

### I.   Inflammatory Nature of the Evidence

In cases of prejudicial spillover, courts "first examine the evidence introduced in support of the [dismissed] count to see if it 'was of such an inflammatory nature that it would have tended to incite or arouse the jury into convicting the defendant on the remaining counts.'" *United States v. Vebeliunas*, 76 F.3d 1283, 1294 (2d Cir. 1996) (quoting *United States v. Wapnick*, 60 F.3d 948, 953 (2d Cir. 1995) (cleaned up)). Mr. Rodvelt argues that the testimony about mines and the permitted 404(b) evidence meets this standard.

First, Mr. Rodvelt argues that introducing testimony about IEDs and mines associated him with terrorism and harmful attacks on United States soldiers. Def.'s Mot. 8.  He specifically points to the government comparing the modified rat trap to high level explosive devices and invoking conflicts in Iraq and Afghanistan. Def's. Mot. 8.

During the fourth day of trial there was considerable testimony about destructive devices. This consisted of multiple experts discussing destructive device components and how the device in this case might fit the definition of a destructive device; specifically, a mine.. Most of this testimony discussed either destructive devices generally or how the rat-trap device should or should not be classified within the definition of a mine. *See* tr. 770–95. References to either Afghanistan or Iraq were limited to the witness's training, job experience, or expertise. *See* tr. 772. At no point did the prosecution make a connection between Mr. Rodvelt and terrorism. While it is

---

[1] Another way for a defendant to succeed in a prejudicial spillover claim is proving the prosecution acted in bad faith in bringing the charges initially. *United States v. Jackson*, 918 F.3d 467, 481 (6th Cir. 2019). This is not an issue in this case, however, as the Court pointed out on record. Tr. 1205–06.

3 – OPINION AND ORDER

well taken that the mention of IEDs and other military weaponry can be inflammatory, the use of these terms in this case do not reach the level required for prejudicial spillover. In fact, the evidence presented by the government in their attempt to equate the rat-trap device with a military mine was unconvincing.

Second, Mr. Rodvelt argues that the destructive device charges allowed the government to introduce prejudicial 404(b) evidence that would otherwise be inadmissible. Def.'s Mot. 9. He specifically points to his prior ownership of NFA firearms and owning the *Manual of Improvised Munitions*. Def.'s Mot. 9. Mr. Rodvelt is correct that the prior ownership of NFA firearms would likely not have been admissible if the unregistered NFA firearm charge was not part of the case. However, mention of this was limited to a single set of questions on day three of the trial. There, the government simply asked a witness if Mr. Rodvelt had registered firearms in the past and if the rat trap device was registered. Tr. 907-08. This limited testimony does not reach the requisite level of pervasive prejudice..

Unlike his registration history, Mr. Rodvelt's possession of the *Manual of Improvised Munitions* would have likely been admitted under Rule 404(b) as evidence of knowledge, preparation, plan, or absence of mistake.[2] Mr. Rodvelt argues that based on Ninth Circuit case law this manual is not admissible. This, however, is a mischaracterization of the law. While "a defendant's choice of reading material will rarely have a particularly significant probative value," it is not per se inadmissible. *United States v. Waters*, 627 F.3d 345, 355 (9th Cir. 2010). A book may be relevant to intent depending upon the facts and circumstances of the case, and the trial court can use its discretion on whether to admit it. *United States v. Curtin*, 489 F.3d 935, 956 (9th

---

[2] Before Mr. Rodvelt took the stand, and certainly before the start of trial, the Government did not know that Mr. Rodvelt would admit to setting the traps.

4 – OPINION AND ORDER

Cir. 2007) (en banc). In this case, Mr. Rodvelt placed a sign prominently on his property warning people to beware of improvised munitions. The manual appropriately goes to his knowledge of what improvised munitions are and his intent to keep people off his property. The Government was permitted to introduce the manual to rebut Mr. Rodvelt's defense that the trap was set to deter rodents, not humans.

## II.     Degree of Overlap and Similarity Between Dismissed and Remaining Charges

"[P]rejudicial spillover is unlikely if the dismissed count and the remaining counts were either quite similar or quite dissimilar." *Lazarenko*, 564 F.3d at 1045 (alteration in original) (quoting *United States v. Hamilton*, 334 F.3d 170, 182 (2d Cir. 2003)). Additionally, "[i]n cases where the vacated and remaining counts emanate from similar facts, and the evidence introduced would have been admissible as to both," prejudicial spillover is difficult to prove. *Vebeliunas*, 76 F.3d at 1294 (quoting *Wapnick*, 60 F.3d at 954).

In Mr. Rodvelt's case, much of the evidence overlapped between the remaining and dismissed charges. Mr. Rodvelt erected an "improvised munitions" sign on his property. Tr. 201. Because of this, a team of bomb experts made up of Oregon State Police and FBI Agent Sellers was called to assess the property and neutralize any threats. Tr. 403-05. The photographs from the search of the property and the subsequent injury of Agent Sellers would be admissible even if the dismissed charges were not in play. Moreover, most of the testimony Mr. Rodvelt objects to was given to define his device. All the testimony regarding how the device functioned—i.e., to demonstrate the device was a "firearm"—would still be admissible.

As for the unregistered NFA firearm charge, this charge is more administrative. It connects directly to whether Mr. Rodvelt's device was considered a destructive device. As addressed above,

the discussion of mines and destructive devices was not so prejudicial to constitute prejudicial spillover.

The charges in this case all emanate from one occurrence with most facts overlapping between counts. Mr. Rodvelt fails to meet his burden of proving prejudicial spillover under this *Lazarenko* factor as well.

### III.     General Assessment of the Strength of the Government's Remaining Counts

*Lazarenko* next directs the Court to evaluate the general strength of the government's case on the remaining counts. 564 F.3d at 1044. The Court should look at the trial as a whole to see if the remaining counts could stand on their own. *United States v. Rooney*, 37 F.3d 847, 856 (2d Cir. 1994). In Mr. Rodvelt's case, there is little question about the legal sufficiency to support conviction on the remaining counts. There was a general consensus that the device Mr. Rodvelt made was a firearm, Mr. Rodvelt set the trap, and Agent Sellers was a federal agent assisting with the search of Mr. Rodvelt's property.

The only real question left for the jury was Mr. Rodvelt's intent. Mr. Rodvelt argued that he set the traps for pest control. The government, however, presented a wealth of evidence to rebut this idea.[3] This remaining question properly went to the jury to decide. The jury gave great weight to (1) the undisputed evidence that Mr. Rodvelt was disappointed he was losing the property and (2) the overwhelming evidence indicating that Mr. Rodvelt set the traps to stop people from coming

---

[3] Mr. Rodvelt placed up multiple signs warning people to stay off his property. Tr. 471. The snap traps and the "*Indiana Jones* rock" style hot tub trap were all set to deter humans. Tr. 341, 374, 471. The traps in the garage and the home were set to human points of entry. Tr. 373, 381. Specifically, the one in the garage was designed to be tripped when the main garage door opened. Tr. 373. Additionally, the jury heard recordings of Mr. Rodvelt telling officers he set traps to stop people from coming onto his property and that a similar modified rat trap in the garage was "set up to shoot at your feet." Tr. 1251.

6 – OPINION AND ORDER

to take the property. The government's case for Counts 1 and 2 needed no additional bolstering from the destructive device testimony.

### IV.    Whether the Trial Court Diligently Instructed the Jury

"In assessing the prejudice to a defendant from the 'spillover' of incriminating evidence, the primary consideration is whether 'the jury can reasonably be expected to compartmentalize the evidence as it relates to separate [charges] . . . .' " *United States v. Cuozzo*, 962 F.2d 945, 950 (9th Cir. 1992) (quoting *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980)). "The trial court's instructions to the jury are a 'critical factor' in this assessment." *Lazarenko*, 564 F.3d at 1043 (quoting *United States v. Cuozzo*, 962 F.2d 945, 950 (9th Cir. 1992)).

This factor was met in *Lazarenko*, when the district court "specifically instructed [the jury] that certain counts were no longer before them, the government stated at the beginning of its closing argument that it was not addressing those counts, and the jury never saw the indictment." *Id.* at 1045. This is precisely what happened in this case. The Court at the beginning of jury instructions informed the jury that Count 3 was no longer in front of them and they should not consider the destructive device testimony. Tr. 1223-24. Beyond this, the Court went out of its way to remind the jurors of this again during instructions, stating it was something they would not consider. Tr. 1228. The government and the defense both reiterated this in their closings as well. It is assumed that juries follow court instructions. *United States v. Mitchell*, 502 F.3d 931, 990 (9th Cir. 2007). Based on all of this, the jury was sufficiently instructed.[4]

/ / / /

/ / / /

---

[4] The final *Lazarenko* factor is evidence of compartmentalization, however, with the amount of overlap between charges, as discussed above, this factor does not weigh for or against either party.

7 – OPINION AND ORDER

## CONCLUSION

Mr. Rodvelt fails to demonstrate prejudicial spillover resulted in a "miscarriage of justice." *Lazarenko*, 564 F.3d at 1043 (citation omitted). Therefore, Mr. Rodvelt's Motion is DENIED.

IT IS SO ORDERED.

DATED this 11th day of October, 2023.

                                                             /s/ Michael McShane
                                                      **Michael J. McShane**
                                              **United States District Judge**